IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| G2A.COM SP. Z O.O. (LTD.), | : | |
| Petitioner, | : | |
| v. | : | C.A. No. 17-mc-177-LPS |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

## MEMORANDUM ORDER

At Wilmington this **5th** day of **September, 2018**, having reviewed Petitioner G2A.COM Sp. z o.o. (Ltd.)'s ("Petitioner" or "G2A") petition to quash a third-party summons issued by the Internal Revenue Service ("IRS") to The Corporation Trust Company ("CTC") (D.I. 18) and Respondent United States of America's ("Respondent") cross-motion seeking denial of Petitioner's petition to quash (D.I. 20), **IT IS HEREBY ORDERED** that the petition to quash (D.I. 18) is **GRANTED IN PART AND DENIED IN PART**. Specifically, that the petition is **GRANTED** as to Request Numbers 1 and 8 and **DENIED** as to Request Numbers 2-7 and 9-16. Consistent with that decision, Respondent's cross-motion (D.I. 20) is **GRANTED IN PART AND DENIED IN PART**, for the reasons explained below.

1. Petitioner, a Polish limited liability company, has been under investigation by the Polish tax authority since 2013. (*See* D.I. 18 ¶¶ 1, 8) As part of its investigation, the Polish tax authority requested, pursuant to the Convention Between the Government of the Unites States of America and the Government of the Polish People's Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Oct. 8, 1974, 28

1

U.S.T. 891 ("United States–Poland Tax Treaty"), that the IRS provide Poland with information related to G2A's business dealings with Gate Arena LLC ("Gate Arena"), a Delaware limited liability company that Poland believes has relevant connections to its investigation of G2A. (*See* D.I. 18 ¶¶ 10, 14; D.I. 20 at 1) On June 28, 2017, IRS agent Glenn Nobriga issued an IRS third-party summons to CTC seeking the information Poland requested about Gate Arena. (D.I. 18 ¶ 6; D.I. 20 at 1)

2. On July 19, 2017, G2A filed a timely motion to quash. (D.I. 1) On October 30, 2017, Respondent's counsel informed G2A that the summons attached to G2A's petition was incomplete (*see* D.I. 15 ¶ 3), prompting G2A to file an amended petition to quash on November 24, 2017 (D.I. 18). On December 15, 2017, Respondent moved for summary denial of G2A's amended petition to quash. (D.I. 20)

3. Prior to G2A filing its amended petition, CTC responded to the summons, informing the IRS that it had no documents or information related to Gate Arena, which led the IRS to withdraw the summons. (D.I. 21 at 1) In light of the IRS's withdrawal of the summons, the Court directed the parties to address whether the pending motions are moot. (D.I. 29) The parties finished letter briefing on July 27, 2018. (D.I. 32, 33, 34, 35)

4. In general, a petition to quash an IRS summons is rendered moot when the summons is withdrawn. *See, e.g., Schaeffler v. United States*, 2016 WL 3369538, at *2 (S.D.N.Y. June 17, 2016), *aff'd*, 696 F. App'x 542 (2d Cir. 2017) ("Case law has routinely recognized that the withdrawal of an IRS summons moots a petition to quash that summons."); *see also id.* (collecting cases holding same); *Badman v. I.R.S.*, 2007 WL 121862, at *1 n.1 (M.D. Pa. Jan. 11, 2007) ("[W]e dismissed his motion [to quash the IRS summons] as moot because

[the IRS agent] had withdrawn the summons.").

5. Here, however, neither party argues that the petition is moot. G2A contends its petition is not moot because the Court may still grant G2A at least part of the relief it seeks: preventing the IRS from informing the Polish tax authority that CTC does not have any responsive information related to Gate Arena. (D.I. 32 at 1-2) Respondent does not explicitly disagree with G2A but focuses its argument on avoiding the "procedural limbo" the government will be placed in if the Court "determines the motions are moot without also ruling on whether the [IRS] may inform Poland of the results of the summons." (D.I. 33 at 2) The Court agrees that there is a live controversy before it.

6. Under 26 U.S.C. § 7609(d), the IRS cannot examine any records received in response to a third-party summons while a petition to quash is pending. (D.I. 32 at 2) Nor, then, can the IRS inform Poland of the results of the summons. (D.I. 32 at 2; D.I. 33 at 2) Thus, even though the summons has been withdrawn, a favorable decision from this Court would redress G2A's alleged injury by preventing the IRS from sharing CTC's lack of information about Gate Arena – which is itself information – with Poland, the authority investigating G2A. *See Gluck v. United States*, 771 F.2d 750, 753-54 (3d Cir. 1985) (concluding appeal was not moot because court could "fashion a remedy – prohibition of the use of the summoned documents – to afford [the plaintiffs] effective relief," even though third-party had fully complied with summons). Accordingly, the pending motions are not moot.

7. Turning to the merits, the IRS is mandated to investigate "persons . . . who may be liable" for taxes. 26 U.S.C. § 7601. To enforce this mandate, the IRS has been given the power to issue summonses (to a taxpayer or third party) for purposes of (1) ascertaining the correctness

3

of any tax return, (2) making a tax return where none has been made, (3) determining the tax liability of any person, (4) collecting a tax liability, or (5) inquiring into any offense connected with the administration or enforcement of the internal revenue laws. 26 U.S.C. § 7602; *see also Donaldson v. United States*, 400 U.S. 517, 523-524 (1971), *abrogated on other grounds by* 26 U.S.C. § 7609.

8. To make a *prima facie* case for enforcement of a summons, the IRS must show: (a) the summons was issued for a legitimate purpose; (b) the summons sought information that may be relevant to that purpose; (c) the information sought was not already within the possession of the IRS; and (d) all administrative requirements were met. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964). In addition, there must not have been any criminal referrals to the Department of Justice regarding the taxpayer. *See* 26 U.S.C. § 7602(d); *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68-69 (3d Cir. 1979). This showing is generally made by the affidavit of the issuing agent. *See Garden State*, 607 F.2d at 68. The same standard applies to a summons issued at the request of a foreign country pursuant to a tax treaty between the United States and that country. *See United States v. Stuart*, 489 U.S. 353, 366-67 (1989).

9. Here, the government relies on the declarations of Agent Glenn Nobriga (D.I. 20 Ex. 2) ("Nobriga Decl."), Agent Alexandra Johnson (D.I. 20 Ex. 3) ("Johnson Decl."), and Program Manager Tina Masuda (D.I. 20 Ex. 4) ("Masuda Decl."). As explained below, these declarations establish all of the requisite standards are met for Request Numbers 2-7 and 9-16.

   a. First, Agent Nobriga issued the summons for the legitimate purpose of determining Petitioner's 2014 tax liability. According to the Polish tax authority, in order to determine G2A's tax liabilities, "it is necessary to establish mutual links between G2A and Gate

4

Arena as well as rules of organization, and financing of the activity" because G2A and Gate Arena were involved in a number of sales and engaged in mediation services during the relevant tax year. (D.I. 21 at 8) (internal quotation marks and alterations omitted) Agent Nobriga thus issued the summons to further the determination of G2A's tax liability.

      b.      Second, the summons is relevant to that purpose. Under § 7602, the IRS may "obtain items of even ***potential*** relevance to an ongoing investigation, without reference to [their] admissibility" under the Federal Rules of Evidence. *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984); *see also id.* at 814 n.11 (acknowledging "widely accepted" relevance standard employed by circuit courts, including Third Circuit: "whether the documents at issue 'might have thrown light upon the correctness of the return'"). Here, the Polish tax authority seeks documents related to Gate Arena's business transactions, personnel, and business operations, which may shed light on Poland's investigation of G2A's relationship to Gate Arena and its impact on G2A's tax liability. Program Manager Masuda declared "[b]ased on the information furnished by . . . Poland, there was a reasonable basis to believe . . . the summons would produce information relevant to Poland's investigation of the income tax liabilities of G2A" and that Poland would furnish the same type of information to the United States were the roles reversed. (Masuda Decl. ¶ 10) Accordingly, the summons satisfies the relevance standard of § 7602.

      c.      Third, Agent Nobriga was "unaware of any materials in the possession of the Internal Revenue Service that were potentially responsive to the Summons" at the time he issued the summons. (Nobriga Decl. ¶ 16) Further, Program Manager Masuda declared, "[A]t the time the summons was issued, the United States Competent Authority was not aware of any

5

documents in the possession of the IRS that could be viewed as responsive to [Poland's] Request for Information." (Masuda Decl. ¶ 9) However, the government concedes the IRS was in possession of "documents regarding Gate Arena in response to a 2013 informal request to Harvard Business Services, Inc. . ." responsive to Request Numbers 1 and 8 and, therefore, does not defend those requests. (D.I. 21 at 12) Accordingly, the Court will quash Request Numbers 1 and 8.

        d.       Fourth, the government has sufficiently demonstrated its compliance with the required administrative procedures. A third-party summons issued by the IRS may be served on the summoned party by hand delivery. *See* 26 U.S.C. § 7603(a). Agent Johnson personally served the summons on a CTC representative the day it was issued, June 28, 2017. (Johnson Decl. ¶ 3) The IRS is also required to provide notice of such a third-party summons to the taxpayer. *See* 26 U.S.C. § 7609(a). The IRS must do so "within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined." 26 U.S.C. § 7609(a)(1). Notice is "sufficient if, on or before such third day, such notice . . . is mailed by certified or registered mail to the last known address of such person . . . ." § 7609(a)(2). Agent Johnson sent notice via certified mail to Gate Arena's last known address on June 28, 2017. (Johnson Decl. ¶ 4) The next day, June 29, 2017, Agent Nobriga sent notice via registered mail to G2A's address in Poland. (Nobriga Decl. ¶ 9) G2A received notice of the summons on July 12, 2017. (D.I. 18 ¶ 20)

        e.       Finally, Agent Nobriga declares there was no Department of Justice referral in effect with respect to Petitioner or Gate Arena at the time the summons was issued and served. (Nobriga Decl. ¶ 17)

10. Because the IRS has met its burden, the burden shifts to Petitioner to show, through particularized factual averments, that the IRS is not acting in good faith or that enforcement of the summons would constitute an abuse of the Court's process. *See Garden State*, 607 F.2d at 71; *Godwin v. United States*, 564 F. Supp. 1209, 1213 (D. Del. 1983). The burden of proving bad faith is a heavy one. *See United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316-18 (1978). Petitioner has failed to meet its burden.

11. G2A first argues that the summons fails to satisfy the requirements of *Powell*. (D.I. 18 ¶) The Court disagrees.

12. As to the first factor, G2A argues the summons was issued for an improper purpose because the summons seeks information outside the scope of the United States–Poland Tax Treaty, which does not extend to investigations of value added tax ("VAT") liabilities. (D.I. 18 ¶ 57) According to G2A, while the Polish tax authority represents that it is investigating G2A's income tax liability, it is, in actuality, attempting to investigate G2A's VAT liability. (*See id.*) But naked allegations of improper purpose are insufficient to prove bad faith. *See United States v. Clarke*, 134 S. Ct. 2361, 2367-68 (2014). The taxpayer must "make a showing of facts that give rise to a plausible inference of improper motive to meet that burden." *Id.* G2A has failed to do so. As G2A concedes, the Polish tax authority made its request pursuant to Article 23 of the United States–Poland Tax Treaty for the purpose of investigating G2A's income tax liability. (D.I. 18 ¶ 58) While G2A argues "the on-going audit of G2A has focused exclusively on VAT issues" (*id.*), G2A does not offer any facts to support that assertion, let alone facts sufficient to give rise to a plausible inference of improper motive on the part of the IRS (*see* D.I. 21 at 10). Thus, G2A's contentions amount to no more than naked allegations of improper

purpose and, accordingly, are insufficient to demonstrate bad faith.

13. As to the second and third *Powell* factors, G2A contends that the summons' 16 document requests fail to meet the standard for relevance and that the IRS already "has or can easily obtain" the 16 categories of documents it seeks. (D.I. 18 ¶¶ 48-53) For the reasons discussed above, these arguments fail, except regarding Request Numbers 1 and 8.

14. Fourth, G2A contends the IRS failed to adhere to required administrative procedures. Specifically, G2A argues (i) the IRS failed to give G2A, the target of the investigation, advance notice of its intent to contact CTC under § 7602; (ii) the notice was incomplete; (iii) the notice did not comply with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Service Convention"); and (iv) the notice was untimely under § 7609(a)(1). (D.I. 18 ¶¶ 34-44) These arguments are unpersuasive.

15. First, the pre-contact notice requirements of § 7602 do not extend to investigations of tax liabilities "for any tax imposed by any other jurisdiction." 26 C.F.R. § 301.7602-2(c)(3)(i)(C); *see also United States v. Stuart*, 489 U.S. 353, 361-62 (1989) ("By its terms, however, [§ 7602(c)] does not apply to the summons challenged in this case, for [the statute] speaks only to investigations into possible violations of United States revenue laws."). Here, the investigation of G2A is for potential violations of Polish tax law. Thus, G2A was not entitled to pre-contact notice under § 7602 and, hence, the IRS did not fail to adhere to the required administrative procedures by not providing it.

16. Next, while G2A contends it only received a partial copy of the summons, Agent Nobriga declares that he sent G2A a complete copy of the summons. (Nobriga Decl. ¶ 10)

Agent Nobriga explains his computer is configured to print double-sided (on the front and back of a single sheet of paper), and he does not recall changing that configuration when printing the attachment for G2A's notice. (*Id.*) In addition, once G2A filed its petition to quash, the government notified G2A that its petition did not include the full summons and sent G2A a complete copy of the summons. G2A was permitted to file an amended petition and, hence, has been given a full and fair opportunity to challenge the full summons. Thus, to the extent any inadequacy existed, G2A has failed to demonstrate it was prejudiced by the inadequacy in the notice and has failed to show that the government acted in bad faith in providing G2A notice of the summons.

17. G2A's Hague Service Convention argument also fails. The Hague Service Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, art. 1. Pursuant to the Convention, service by mail is permitted, but only if the receiving state does not object. *See id.*, arts. 8, 10. Poland is one of the countries that has objected to Article 10 of the Hague Convention. *See* Hague Service Convention, Reservation of Poland. Accordingly, service by mail is not allowed in Poland.

18. The government, however, contends that "[n]othing obligates the [IRS] to provide notice of a third-party summons to a foreign taxpayer in compliance with the Hague Service Convention." (D.I. 21 at 17) According to the government, the IRS need only comply with the administrative requirements of the Internal Revenue Code, under which the IRS is "not require[d] . . . to ***serve*** a notice of a summons; it is merely required to give ***notice*** of the summons." (*Id.*) It follows, in the government's view, that the Hague Service Convention does

not apply so any purported failure to comply with it is immaterial.

19.    It is not necessary for the Court to decide the applicability of the Hague Service Convention to notice of an IRS summons. *But see generally Lidas, Inc. v. United States*, 238 F.3d 1076, 1084 (9th Cir. 2001) (considering petitioner's challenge to notice of IRS summons under Hague Service Convention). *Powell* mandates that the IRS comply with "the administrative step[s] required by the [***Internal Revenue***] ***Code***," not any other source of law, *Powell*, 379 U.S. at 58 (emphasis added). Even assuming, without deciding, that the strictures of the Hague Service Convention are included in the administrative steps required by *Powell*, to the extent an administrative defect exists here G2A has not shown that it was prejudiced by it or that the government acted in bad faith in issuing the summons. Instead, G2A received actual notice of the summons before the production date and was able to timely file its petition to quash. G2A has failed to carry its heavy burden of demonstrating bad faith or abuse of the Court's process; the Court will not require the IRS to re-issue notice of the summons. *See Cook v. United States*, 104 F.3d 886, 890 (6th Cir. 1997) (holding district courts possess discretionary authority to excuse IRS' technical notice errors where party-in-interest suffered no actual prejudice).

20.    G2A's untimeliness argument also fails. Nothing in § 7609 requires actual receipt of the notice in order for it to be timely.[1] Agent Nobriga mailed notice of a summons on June 29,

---

[1] The Court agrees with the government that "the taxpayer's receipt of the notice was . . . not at issue" in *Jewell v. United States*, 749 F.3d 1295 (10th Cir. 2014). (D.I. 21 at 21 n.1) In *Jewell*, the government, which had failed to mail notice of the summons until 20 days before the production deadline, conceded that it had failed to give the required 23 days' notice. (*See id.* (reciting facts from district court); *see also Jewell*, 749 F.3d at 1298) Thus, the question before the *Jewell* Court was not whether § 7609 requires actual receipt of the notice to be effective, but rather whether strict compliance with the 23 days' notice requirement is required under *Powell*. *See Jewell*, 749 F.3d at 1298 ("The resulting question is whether we are free to disregard the statutory requirement of 23 days' notice."). Moreover, *Jewell* is contrary to holdings of five

10

2017, more than 23 days before the summons' July 24, 2017 production date, as required by § 7609(a)(1). (Nobriga Decl. ¶ 9) G2A filed its original petition to quash on July 19, 2017, before the summons' production date and within 20 days of the notice, as required by § 7609(b)(2)(A). Accordingly, G2A did not suffer any prejudice by receiving notice at the time it did and has failed to show the IRS did not comply with the administrative requirements concerning timely notice of the summons.

21. Finally, G2A challenges the summons as overly broad. (D.I. 18 ¶¶ 61-62) According to G2A, the summons constitutes an "unfettered fishing expedition" because it seeks documents "pertinent to [calendar year 2014]" without providing guidance to CTC about what makes a document "pertinent." (D.I. 18 ¶¶ 63-64) The IRS "is not entitled to go on a fishing expedition through [a taxpayer's] records. It must identify with some precision the documents it wishes to inspect." *United States v. Dauphin Deposit Tr. Co.*, 385 F.2d 129, 131 (3d Cir. 1967). Still, the Court agrees with the government that "[t]here is nothing inherently overbroad about a request for a document related to 2014 that is dated outside of 2014." (D.I. 21 at 10) CTC has sufficient guidance and ability to respond to the summons. *See Dauphin*, 385 F.2d at 131 (quashing summons for "[a]ll records relative to other accounts" over period of three years for being too indefinite). Accordingly, the summons will not be quashed as overly broad.

_____<br>
HONORABLE LEONARD P. STARK<br>
UNITED STATES DISTRICT JUDGE

---

other circuit courts, which "have declined to enforce the 23-day requirement as mandatory." *Id.* at 1300.